UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALLEN M.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. C18-5983-MLP

ORDER

# I. INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income. Plaintiff contends the administrative law judge ("ALJ") erred in assessing the medical evidence, and in discounting his testimony and the lay testimony.[1] (Dkt. # 14 at 2.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

# II. BACKGROUND

Plaintiff was born in 1956, has a high school diploma and a year of college education, and previously worked as a commercial fisherman and more recently worked on his own farm.

---

[1] Plaintiff also assigns error to the ALJ's residual functional capacity ("RFC") assessment and step-five findings, but in doing so only reiterates arguments made elsewhere. (Dkt. # 14 at 17-18.) Thus, these issues need not be addressed separately.

ORDER - 1

AR at 45, 193, 673-74. Plaintiff's income records last show gainful employment in 1995, but Plaintiff reports working until 2005. *Id.* at 185, 193.

In October 2012, Plaintiff applied for benefits, alleging disability as of December 31, 2005. AR at 174-80. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 96-99, 103-06, 111-13. After the ALJ conducted a hearing on September 16, 2014 (*id*. at 40-68), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 19-34. The Appeals Council denied Plaintiff's request for review (*id*. at 1-6), and Plaintiff sought judicial review. The U.S. District Court for the Western District of Washington reversed the ALJ's decision and remanded the case for further administrative proceedings. *Id*. at 733-43.

A different ALJ held a hearing on April 13, 2018 (AR at 663-99), and subsequently issued a decision finding Plaintiff not disabled.[2] *Id*. at 632-53. Utilizing the five-step disability evaluation process,[3] the ALJ found:

> Step one: Plaintiff has worked since his 2012 application date, but never reported his income and therefore it cannot be determined whether his work constitutes substantial gainful activity. Thus, the ALJ continued on with the sequential evaluation process.
>
> Step two: Plaintiff's degenerative disc disease, chronic pain syndrome, migraines, left shoulder osteoarthritis and tendonitis, adhesive capsulitis and rotator cuff impingement syndrome status post manipulation under anesthesia, status post aneurysm, major depressive disorder, and mild cognitive disorder are severe impairments.
>
> Step three: These impairments do not meet or equal the requirements of a listed impairment.[4]
>
> RFC: Plaintiff can perform medium work with additional limitations: he can frequently climb, balance, stoop, kneel, crouch, and crawl. He can frequently reach in all directions bilaterally. He must avoid concentrated exposure to vibration and hazards. He is limited to simple, routine, and repetitive tasks consistent with unskilled work. He is limited to low-stress work, which is defined as work requiring few decisions/changes. He can have no public contact and only superficial contact with coworkers and occasional contact with

---

[2] This decision addressed both the 2012 application and a subsequent application filed in 2015. AR at 632, 749.
[3] 20 C.F.R. § 416.920.
[4] 20 C.F.R. Part 404, Subpart P, Appendix 1.

supervisors.

Step four: Plaintiff has no past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

*Id*. at 632-53.

Plaintiff now appeals the final decision of the Commissioner to this Court.

### III.   LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

# IV. DISCUSSION

## A. The ALJ Did Not Err in Assessing the Medical Evidence

Plaintiff challenges the ALJ's assessment of a number of medical opinions, each of which the Court will address in turn.

### 1. *Legal Standards*

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "clear and convincing" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ may discount a medical opinion written by a non-acceptable medical source such as a nurse or therapist by providing reasons germane to each source. *See Molina*, 674 F.3d at 1111.

### 2. *Kimberly Wheeler, Ph.D.*

Dr. Wheeler examined Plaintiff twice, in 2012 and again in 2016, and on both occasions completed DSHS form opinions describing his symptoms and limitations. AR at 365-73, 1020-24. The ALJ discounted the 2012 opinion and gave significant weight to the 2016 opinion. *Id*. at 645-48.

With respect to the 2012 opinion, the ALJ noted that Dr. Wheeler's opinion that Plaintiff had marked cognitive and social limitations was inconsistent with the record, specifically mental status examinations (including Dr. Wheeler's) showing normal fund of knowledge and normal

concentration, persistence, and pace, as well as Plaintiff's robust farm and childcare activities. AR at 647-48.

Plaintiff argues that the ALJ erred because Dr. Wheeler based her opinion on her independent clinical findings (dkt. # 14 at 5), but the ALJ did not assert otherwise or suggest that she based it on Plaintiff's subjective reporting. Plaintiff also argues that Dr. Wheeler's opinion is consistent with his history of attempting suicide (*id.*), but again, the ALJ did not argue that it was inconsistent with that evidence: the ALJ pointed to other substantial evidence that contradicts Dr. Wheeler's opinion.

Finally, Plaintiff argues that Dr. Wheeler's opinion is in fact consistent with his actual activities, as opposed to the overstated activities described by the ALJ. Plaintiff has not shown that the ALJ overstated his activities, however. It is not an overstatement to characterize the record as documenting Plaintiff's reports of copious farm activities and childcare responsibilities, which conflict with an opinion that his physical, mental, emotional and social limitations were disabling. *See, e.g.*, AR at 1109 (Plaintiff is looking forward to getting "a break" when his kids start preschool), 1112 (Plaintiff reports caring for twins and his significant other), 1124-25 (Plaintiff did a large amount of cooking for his daughter's wedding – made half a pig and lamb), 1796 (Plaintiff spent the last three months fishing in Alaska), 1860 (doctor describes Plaintiff as "stable on med regimen and certainly maintains an active lifestyle"), 1897 (Plaintiff describes some "long days" "when he's up and working with livestock all day"), 1905 (Plaintiff describes pain as "pretty well controlled" by medication, which lets him be "much more functional at home, able to work and play with the kids"), 1909 (Plaintiff describes doing "a lot of physical work to get the travel trailer working for them"), 1973 (Plaintiff reports his functioning is "not difficult at all"), 1992 (Plaintiff described as "working full-time on farm and raising twin

infants"), 2029 (Plaintiff "is working actively as a rancher at the present time"), 2038 (Plaintiff "playing his guitar and doing his normal activities"), 2133 (Plaintiff was stacking bales of hay in a barn in 2012), 2168 ("Patient is currently working. He is seeking disability compensation."). The ALJ did not err in finding Plaintiff's activities to be inconsistent with the disabling limitations described in Dr. Wheeler's opinion.

To the extent that Plaintiff contends that he could have performed the farm and childcare activities in a manner consistent with his allegations (dkt. # 14 at 12-13), he has not shown that this is the only reasonable interpretation of the evidence. Because he has failed to show that the ALJ's interpretation of the evidence was unreasonable or not supported by substantial evidence, Plaintiff has not shown that the ALJ erred in discounting Dr. Wheeler's 2012 opinion based on inconsistency with the medical record and with his activities.[5] *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity).

Plaintiff goes on to argue that the ALJ erred in purportedly crediting Dr. Wheeler's 2016 opinion but failing to account for the moderate limitations she described therein. (Dkt. # 14 at 5-6 (citing AR at 1022-23).) But the ALJ's RFC assessment contains significant cognitive, social, and adaptation restrictions (AR at 637), and Plaintiff has failed to explain why those restrictions do not adequately account for Dr. Wheeler's 2016 opinion. Accordingly, Plaintiff has failed to meet his burden to show harmful legal error in the ALJ's assessment of Dr. Wheeler's opinion.

---

[5] Because the ALJ properly discounted Dr. Wheeler's 2012 opinion, it follows that the ALJ did not err in discounting the opinion of Melanie Mitchell, Psy.D., which mirrored Dr. Wheeler's 2012 opinion. *See* AR at 514-16, 648.

### *3. Peter Weiss, Ph.D.*

Dr. Weiss examined Plaintiff in June 2017 and completed a DSHS form opinion describing his symptoms and limitations. AR at 1770-74. The ALJ discounted the severe and marked limitations described by Dr. Weiss, finding them to be unsupported by the medical record, which showed Plaintiff to be stable and busy at this time, yet Plaintiff suggested to Dr. Weiss that he was engaged in little activity at the time. *See id.* at 1770-71. As the ALJ notes, Plaintiff did not report needing help with most of his daily activities, and did some of them entirely on his own, such as going fishing in Alaska for three months. *Id.* at 646 (citing *id.* at 1796). As found above, inconsistency with the record and inconsistency with the claimant's activities are both specific, legitimate reasons to discount a medical opinion. *See Tommasetti*, 533 F.3d at 1041; *Rollins*, 261 F.3d at 856.

Plaintiff argues that it is not clear from the record whether he was fishing for pay or for sport, or whether he actually spent the entire three months fishing. (Dkt. # 14 at 7.) These speculative questions do not show that the ALJ's interpretation of the record was unreasonable; Plaintiff cites no authority requiring an ALJ to ask questions about an activity before it can be found inconsistent with an allegation, and the Court is not aware of any. *See, e.g.*, *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("There is no merit in [plaintiff's] contention that the ALJ should have given her a chance, while at the hearing, to explain the inconsistent statements and other factors that led him to find her not credible.").

Because the ALJ cited specific, legitimate reasons to discount Dr. Weiss's opinion, the ALJ's assessment of Dr. Weiss's opinion is affirmed.[6]

//

---

[6] Accordingly, the Court concludes that the ALJ did not err in discounting the opinion of Dana Harmon, Ph.D., which mirrors the severity ratings found in Dr. Weiss's opinion. *See* AR at 646, 1775-78.

### 4. Aimee King, BS, AAC

Ms. King completed a form opinion in October 2017, describing Plaintiff's limitations. AR at 1779-82. The ALJ discounted the extreme limitations described by Ms. King as inconsistent with the medical record as well as Plaintiff's farm and childcare activities. *Id*. at 647. Plaintiff disputes these reasons, and contends that the ALJ exaggerated his activities. (Dkt. # 14 at 7.) As discussed above, the record amply supports the ALJ's finding that Plaintiff's activities conflict with an opinion describing disabling physical and mental limitations. This is a legally sufficient reason to discount Ms. King's opinion. *See Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (germane reasons for discounting lay testimony included inconsistency with medical evidence, evidence of claimant's activities, and claimant's reports).

### 5. Brian Reiton, PAC

Mr. Reiton, a treating provider, suggested in January 2013 that Plaintiff was "unemployable." AR at 457. The ALJ described this statement as "conclusory" and found that it was unhelpful in the ALJ's task of determining Plaintiff's RFC, and that it was also inconsistent with Plaintiff's activities. *Id*. at 648.

Plaintiff argues that the ALJ erred in repeating the rationale for discounting Mr. Reiton's opinion as stated in the prior ALJ decision. (Dkt. # 14 at 7-8.) Plaintiff fails to note that the U.S. District Court's remand order affirmed the prior ALJ's assessment of Mr. Reiton's opinion (AR at 737-38), which explains why the ALJ reiterated the reasoning from the prior decision. This Court will not reconsider the sufficiency of the ALJ's reasons for discounting Mr. Reiton's opinion when that reasoning has already been affirmed by this Court. *See Stacy v. Colvin¸* 825 F.3d 563, 567 (9th Cir. 2016) (discussing application of the law of the case doctrine in Social Security cases).

### 6. *Miscellaneous Medical Evidence*

Plaintiff summarizes other medical evidence without showing how the ALJ erred in assessing it. (Dkt. # 14 at 8-9.) This portion of Plaintiff's brief does not advance Plaintiff's appeal and need not be addressed further.

### 7. *State Agency Opinions*

Plaintiff raises several challenges to the ALJ's assessment of the State agency opinions. (Dkt. # 14 at 9-10.) He contends that the ALJ erred in failing to note that non-examining doctor opinions are generally entitled to the least weight. (*Id*.) He cites no authority requiring an ALJ to explicitly discuss the general legal standards applicable to an assessment of medical opinions, and the Court is not aware of any.

He also argues that the State agency opinions should have been discounted because the reviewing consultants did not have the opportunity to review evidence that post-dated their review. (Dkt. # 14 at 9.) But the ALJ had the opportunity to review the State agency opinions in light of the entire record, which addresses Plaintiff's concern regarding the timing of State agency review. AR at 644-45.

Lastly, Plaintiff argues that the ALJ erred in discounting a State agency consultant's opinion that Plaintiff would require "occasional reminders to stay on task." (Dkt. # 14 at 9 (quoting AR at 89).) The ALJ explained that he found that restriction to be inconsistent with Plaintiff's demonstrated ability to stay on task with regard to his farm and childcare activities. AR at 650. Although Plaintiff contends that the consultant's opinion is "fully consistent with the evidence regarding [his] actual activities[,]" he has not shown that the ALJ's interpretation of his activities is unreasonable or unsupported by substantial evidence. (Dkt. # 14 at 9.) As explained *supra*, the record contains ample evidence that Plaintiff retained the ability to stay on task in

order to complete many activities, and thus the Court finds that the ALJ provided a legally sufficient reason to discount the State agency consultant's contrary opinion. The ALJ's assessment of the State agency opinions is therefore affirmed.

### B. The ALJ Did Not Err in Discounting Plaintiff's Subjective Testimony

The ALJ discounted Plaintiff's subjective allegations for many reasons: (1) the medical record was inconsistent with allegations of debilitating symptoms, because it showed many normal findings, improvement with medication, and/or sparse treatment; (2) Plaintiff frequently reported to providers that he engaged in a wide variety of activities that were inconsistent with his allegations; and (3) Plaintiff "continuously engaged in full-time self-employment activity" for most of the adjudicated period, and worked under the table for years before and after his alleged onset date. AR at 638-44. Plaintiff contends that these reasons are not clear and convincing, as required in the Ninth Circuit. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

#### *1. Medical Record*

Plaintiff first argues that an ALJ cannot discount a claimant's testimony solely due to a lack of support in the medical record. (Dkt. # 14 at 10-11.) That may be true, but the ALJ provided other reasons, and thus Plaintiff has failed to show that the ALJ erred in considering the extent to which Plaintiff's allegations were supported by the record. *See Rollins*, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Next, Plaintiff argues that his "very sparse treatment records" for his physical ailments is not a convincing reason to discount his testimony. (Dkt. # 14 at 11.) The Ninth Circuit has held

otherwise. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated.").

Plaintiff also argues that the ALJ erred in discounting his allegations of mental limitations based on minimal treatment and improvement with medication, because Plaintiff twice attempted suicide. (Dkt. # 14 at 11.) But, as Plaintiff notes, the ALJ acknowledged those suicide attempts and also cited evidence showing that once Plaintiff stabilized on medication after the time of the suicide attempts, his symptoms improved. *See, e.g.*, AR at 641.

Lastly, Plaintiff challenges the ALJ's reliance on a 2004 neuropsychological evaluation, arguing that the "relevant time period" in this case begins in October 2012. (Dkt. # 14 at 11.) Plaintiff's benefits application alleged his disability began in 2005, however. *See* AR at 174. Furthermore, the ALJ cited many other examination results, and thus any error in citing the 2004 results would be harmless. *See id.* at 642-43.

    *2. Activities*

As discussed *supra*, the record contains ample evidence that Plaintiff engaged in activities inconsistent with his allegations, and this is a valid reason to discount a claimant's allegations. *See Orn*, 495 F.3d at 639 (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills[.]").

Moreover, Plaintiff repeatedly reported to providers that he was quite functional, in contrast to his allegations of disabling functional limitations. *See, e.g.*, AR at 463 (Plaintiff tells doctor he "works on a farm that requires frequent heavy lifting, hammering, turning wrenches, etc. He says pain began when he was moving 75[-pound] bales of hay into barn"), 974 (Plaintiff

has been wrestling newborn calves to "deal with their umbilical cords"), 1002 (Plaintiff was hoisting a pig), 1021 (Plaintiff reports moving boxes, caring for animals (6 horses, 10 cows, 20-30 chickens), caring for 6-year-old twins), 1051 (Plaintiff is working "full-time"), 1860 (doctor describes Plaintiff as "stable on med regimen and certainly maintains an active lifestyle"), 1897 (Plaintiff describes some "long days" "when he's up and working with livestock all day"), 1905 (Plaintiff describes pain as "pretty well controlled" by meds, which lets him be "much more functional at home, able to work and play with the kids"), 1909 (Plaintiff describes doing "a lot of physical work to get the travel trailer working for them"), 1973 (Plaintiff reports his functioning is "not difficult at all"), 1992 (Plaintiff "working full-time on farm and raising twin infants"), 2029 (Plaintiff says he "is working actively as a rancher at the present time"), 2038 (Plaintiff reports "playing his guitar and doing his normal activities"), 2133 (Plaintiff was stacking bales of hay in a barn), 2168 ("Patient is currently working. He is seeking disability compensation."), 2183 (Plaintiff rates functionality as 8/10, with 10 as the highest level of functioning), 2186 (Plaintiff rates functionality as 9/10), 2190 (Plaintiff rates functionality as 9/10), 2195 (Plaintiff rates functionality 10/10), 2241 ("He remains very active on his ranch and does not feel he would be able to do so without his medication."). This evidence constitutes substantial evidence to support the ALJ's finding that Plaintiff's activities contradicted his allegations.

Plaintiff disputes whether the evidence is convincing enough with respect to certain activities such as attending horse shows and chicken auctions, but only posits an alternative interpretation of the evidence and has not shown that the ALJ's interpretation was unreasonable. (Dkt. # 14 at 12-13.)

Plaintiff also disputes whether his childcare responsibilities were as extensive as the ALJ

claimed, but again, Plaintiff described significant involvement to his providers. *See, e.g.*, AR at 1109 (Plaintiff reported that once his kids start preschool, he will get a break), 1112 (Plaintiff reports caring for twins and his significant other), 1992 (Plaintiff "working full-time on farm and raising twin infants"), 2264 (Plaintiff describes how he gets girls ready for school in the mornings), 2266 (Plaintiff reports his child care responsibilities were causing stress). Plaintiff has not shown that the ALJ inaccurately described Plaintiff's childcare duties.

Plaintiff also contends that the fact that he carried boxes when he moved "proves nothing" (dkt. # 14 at 12): it may not necessarily prove anything about his RFC, but it does contradict his allegations of disabling physical pain in his back, neck, and shoulders, and as well as his alleged need to avoid heavy lifting.

For all of these reasons, Plaintiff has failed to show that the ALJ erred in finding his activities to conflict with his allegations, and discounting them on that basis.

### 3. *Work History*

Plaintiff contends that the ALJ erred in relying on evidence suggesting that he worked under the table before October 2012, because that evidence is not relevant to his condition after October 2012. (Dkt. # 14 at 12.) But again, Plaintiff alleged that his disability began in 2005, and therefore Plaintiff's work activity after the alleged onset date is relevant to the ALJ's disability determination. Furthermore, as noted by the ALJ, Plaintiff's ability to work after his aneurysm in 1998 undermines his allegation that the aneurysm caused disabling limitations. AR at 643. Plaintiff has not established error in this portion of the ALJ's reasoning.

Because all of the reasons provided by the ALJ for discounting Plaintiff's testimony are clear and convincing, the Court affirms the ALJ's assessment of Plaintiff's testimony.

//

**C.     The ALJ Did Not Err in Discounting the Lay Testimony**

The record contains written statements from Delina Maloch (Plaintiff's partner) and Dan Cabeciras (a hired worker on Plaintiff's farm), as well as Ms. Maloch's testimony at the 2018 administrative hearing. AR at 217-24, 259-61, 683-94. The ALJ summarized the statements of Ms. Maloch and Mr. Cabeciras, and explained that he discounted them as inconsistent with the evidence of Plaintiff's robust activities. *Id*. at 648-50. The ALJ noted that although the United States District Court's remand order suggested that the prior ALJ decision (*id*. at 30-32) had overstated Plaintiff's activities (*id*. at 741-42), a review of the entire updated record contradicts that interpretation. *Id*. at 649-50.

Plaintiff argues that the ALJ erred in citing his activities again as a reason to discount the lay statements, in violation of the Court's remand order finding this reason to be insufficient. (Dkt. # 14 at 17.) But in the current decision, the ALJ cited specific activities (including some that took place more recently than the prior ALJ decision) that contradicted the allegations of the lay witnesses, which addresses the concerns raised in the Court's remand order that the prior ALJ's reasoning was unsupported. *See* AR at 741-42. Because the evidence before the current ALJ was different than the evidence before the prior ALJ, and the current ALJ provided more detailed analysis of the entire record, the law of the case doctrine does not apply and the ALJ here did not err in citing the evidence of Plaintiff's inconsistent activities as a reason to discount the lay statements. *See Stacy*, 825 F.3d at 567 ("The (law of the case) doctrine is concerned primarily with efficiency, and should not be applied when the evidence on remand is substantially different . . ."); *Lewis*, 236 F.3d at 511-12 (germane reasons for discounting lay testimony included inconsistency with medical evidence, evidence of claimant's activities, and claimant's reports).

//

**V. CONCLUSION**

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 4th day of October, 2019.

_____
MICHELLE L. PETERSON
United States Magistrate Judge